J-S19013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTIAN BUENO, | |
| Appellant | No. 1685 EDA 2015 |

Appeal from the PCRA Order Entered May 13, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000791-2011

BEFORE:  BENDER, P.J.E., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 19, 2016**

Appellant, Christian Bueno, appeals from the May 13, 2015 order denying his petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

The PCRA court set forth the underlying procedural history of this cas as follows:

> On September 20, 2011, [Appellant] entered a plea of guilty to the charge of Criminal Homicide – Murder of the first degree (18 Pa.C.S.A. § 2501(a)).  A Pre-Sentence Investigation report was waived and [Appellant] wished to immediately proceed to sentencing.  On September 20, 2011, [Appellant] was sentenced to a term of life imprisonment in a state correctional institution.  Thereafter, on September 30, 2011, [Appellant] filed a Post Sentence Motion in the form of a Motion to Withdraw Guilty Plea pursuant to Pennsylvania Rule of Criminal Procedure Rule 720.  After [a] hearing, this motion was denied by this [c]ourt on October 10, 2011.  [Appellant's] appeal followed on November 8, 2011.  Thereafter, this [c]ourt's judgment of sentence was affirmed by the Superior Court of Pennsylvania on August 7, 2012.  [*Commonwealth v. Bueno*, 60 A.3d 560 (Pa.

Super. 2012) (unpublished memorandum).] On September 6, 2012, [Appellant] filed a petition for allowance of appeal with the Supreme Court of Pennsylvania that was denied on January 9, 2013. [**Commonwealth v. Bueno**, 62 A.3d 377 (Pa. 2013).]

PCRA Court Opinion (PCO), 5/13/15, at 1-2.

Appellant filed a timely, *pro se* PCRA petition on January 9, 2014. Counsel was appointed, but was subsequently granted leave to withdraw after filing a petition and 'no merit' letter in accordance with **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). Appellant retained private counsel who filed several amended petitions on his behalf over the ensuing months. After multiple continuances, a PCRA hearing was conducted on March 26, 2015. Based on the evidence presented at Appellant's trial, and at the PCRA evidentiary hearing, the court made the following findings of fact, which Appellant does not dispute:

Pursuant to the trial testimony, as well as the recitation of facts that were acknowledged at both the guilty plea of [Appellant] … and Co-Defendant Dennis Velez, the circumstances that give rise to the within matter occurred on September 8, 2007. On that date, at approximately 1:00 A.M., [Appellant] … was with Co-Defendant Dennis Velez at the house of Reina Lopez, … Velez'[s] sister. … Velez requested that his girlfriend, Amarilys Soto, drive him and [Appellant] to Diamonz Night Club, an alternative lifestyle club, located at 1913 West Broad Street, Allentown, Lehigh County, Pennsylvania, for the purpose of robbing someone to acquire money. Upon their arrival at Diamonz Night Club, they encountered Debra Robberson sleeping in her green minivan.[1] [Appellant], armed with a handgun, approached Ms. Robberson's vehicle and opened the vehicle door. A struggle ensued between [Appellant] and Ms. Robberson. At that time, … Velez advanced with his shotgun in hand, and hit Ms. Robberson in the face with it, causing her to

fall backwards. [Appellant] then shot Debra Robberson in the chest, killing her.

> [1] Ms. Robberson had consumed an excessive amount of alcohol that night while celebrating her birthday, and she fell asleep in her vehicle.

On September 15, 2011, … Velez entered a guilty plea to Murder of the Third Degree and Conspiracy to Commit Robbery. The terms of the guilty plea were that the charges would run concurrently and that he would testify truthfully at [Appellant's] trial. At that time, he acknowledged the facts as set forth by the Commonwealth, which were consistent with his trial testimony against [Appellant] (and as recited above) …. Specifically, … Velez acknowledged that [Appellant] shot and killed Debra Robberson. Thereafter, on October 21, 2011, [Velez] was sentenced to a term of state imprisonment of not less than twenty (20) years nor more than forty (40) years. At the time of the sentencing, … Velez reiterated that he testified truthfully at [Appellant's] trial, and that it was [Appellant] who had killed Robberson.

Nevertheless, … Velez testified at the [PCRA] evidentiary hearing on March 26, 2015, that he had lied at the time of [Appellant's] trial. He indicated that [Appellant] did not shoot Debra Robberson, but that he did. … Velez further testified that [Appellant] was drunk and asleep in the back seat of the car. In addition, … Velez testified that he instructed two (2) people to go to [Appellant's] mother's residence to threaten her and to advise her that her son should take the rap for the murder of Debra Robberson or there would be consequences. The [c]ourt did not find any of … Velez's testimony to be credible. Of note, after … Velez testified [at the PCRA hearing] and was being led out of the courtroom, he said to [Appellant], "Call me." This was audible to the [c]ourt and placed on the record at the time.

Manuel Gonzalez, a prisoner at SCI-Fayette as a result of a conviction of a charge of Murder of the Third Degree in Lehigh County, testified at the time of the evidentiary hearing. He stated that when he was in the "hole" in Lehigh County Prison with … Velez in March of 2012, … Velez told him that "he killed a girl who was a dike in the parking lot of a club" and he told authorities that "Low Rider" did it so he would get less time. Manuel Gonzalez testified that he did not know the real identity of "Low Rider." In fact, Manuel Gonzalez testified that it was not

- 3 -

until he spoke two (2) years later with a fellow inmate at SCI-Fayette, Hector Maldonado, that he learned that "Low Rider" was [Appellant]. Specifically, Manuel Gonzalez testified at the evidentiary hearing that during a conversation between him and Hector Maldonado about … Velez, the name "Low Rider" came up and Hector Maldonado told Manuel Gonzalez that this was [Appellant]. This conversation took place around September of 2014. The [c]ourt did not find Manuel Gonzalez's testimony to be credible.

Hector Maldonado, a prisoner at SCI-Greene as a result of a conviction of a charge of Murder of the First Degree arising out of Philadelphia County, also testified at the time of the evidentiary hearing. Hector Maldonado testified that when he was at SCI-Fayette, he had a conversation with his cell mate, Manuel Gonzalez, about people who they knew from the Allentown area, as well as people who were serving a life sentence but were innocent. At this time, Manuel Gonzalez mentioned [Appellant] as falling into that category. Contrary and inconsistent with Manuel Gonzalez's sworn testimony at the time of the hearing, Hector Maldonado testified that Manuel Gonzalez used [Appellant's] name when referring to him. This [c]ourt did not find Hector Maldonado's testimony to be credible.

In addition, [Appellant's] mother, Jackeline Moncayo, testified at the evidentiary hearing. She indicated that approximately two (2) weeks before [Appellant's] trial commenced, three (3) unidentified men came to her residence in Brooklyn, New York[,] to threaten her. Specifically, these men told her that her son better lose his trial or they would "take care" of them. Ms. Moncayo failed to mention this incident to anyone until September 20, 2011, the day that [Appellant] entered his guilty plea in the within matter after Attorney Matthew Potts advised him that the jury trial was going poorly for him. This [c]ourt did not find Jackeline Moncayo's testimony to be credible.

PCO at 3-6 (citations to the record omitted).

Based on these factual findings and credibility determinations, the PCRA court denied Appellant's petition. Appellant filed a timely notice of appeal, and also timely complied with the court's order to file a Pa.R.A.P.

- 4 -

1925(b) concise statement of errors complained of on appeal. Herein, he presents one issue for our review:

> The PCRA court erred because there was sufficient credible evidence in the record corroborating Dennis Velez's PCRA testimony that he, in fact, shot Debra Robberson, not [Appellant]. This after-discovered evidence proves the factual basis of [Appellant's] guilty plea is invalid and unconstitutional, that [Appellant] is legally innocent of first-degree murder, and that [Appellant] has satisfied the injustice standard to have his guilty plea withdrawn. U.S. Const. amends. V, VI, VII, XIV; Pa. Const. art. 1, §§ 1, 9.

Appellant's Brief at 2.

> To begin, we note:

> We review an order denying [] collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error. ***Commonwealth v. Mitchell***, ––– Pa. ––––, 105 A.3d 1257, 1265 (2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." ***Id.*** (quoting ***Commonwealth v. Roney***, 622 Pa. 1, 79 A.3d 595, 603 (2013)).

***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*).

On appeal, Appellant presents a lengthy argument, essentially presenting two claims: (1) that his plea was unlawfully induced (and, thus, the PCRA court should have allowed him to withdraw it) where it was premised on facts proven to be untrue by Velez's recantation; and (2) that Velez's recantation constitutes after-discovered evidence warranting the withdrawal of his plea and a new trial. We will address each of these claims, in turn.

First, Appellant correctly acknowledges that "[a]fter sentencing, a defendant can move to withdraw his guilty plea, but only if he presents evidence showing a 'manifest injustice[.]'" Appellant's Brief at 43 (quoting ***Commonwealth v. Yeomans***, 24 A.3d 1044, 1046 (Pa. Super. 2011) (citation omitted). Additionally, to be eligible for PCRA relief based on an unlawful guilty plea, a petitioner must prove, by a preponderance of the evidence, that his conviction resulted from "[a] guilty plea unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa.C.S. § 9543(a)(2)(iii).

Here, we ascertain no 'manifest injustice,' or inducement underlying Appellant's plea, that would compel the PCRA court to allow him to withdraw it. The PCRA court found the testimony of Velez, and Appellant's other witnesses, to be not credible. The record supports the court's credibility determinations. Notably, Velez testified at Appellant's trial that Appellant shot the victim. Velez also stated this fact at his guilty plea proceeding, and at the time of his sentencing. Additionally, at Appellant's own guilty plea proceeding, he "admitted his role in the homicide and apologized to the victim's family." PCO at 8 n.3. The PCRA court stressed that, after apologizing to the victim's family, Appellant stated, "And that comes from the heart because if I knew it was a girl ***I would have never done it***. So I just want to say that to be clear about that." ***Id.*** at 8-9 n.3 (quoting N.T. Plea/Sentencing, 9/20/11, at 18) (emphasis added). The PCRA court also

provided a detailed discussion pertaining to the voluntariness of Appellant's plea, and concluded that "[t]he record clearly indicates that [Appellant] understood the consequences of his pleading guilty." *See* PCO at 7-8. This Court also reviewed the voluntariness of Appellant's plea on direct appeal, and concluded that it was valid and not unlawfully induced. *See* ***Commonwealth v. Bueno***, No. 3039 EDA 2011, unpublished memorandum at 4-7 (Pa. Super. filed August 7, 2012).

In light of this record, we ascertain no abuse of discretion by the PCRA court in denying Appellant's claim that his guilty plea was unlawfully induced or invalid based on Velez's unreliable recantation. The PCRA court was free to credit Velez's earlier statements and testimony naming Appellant as the shooter, and to reject his later version of events in his recantation. Likewise, the PCRA court was permitted to disbelieve the testimony of the other witnesses presented at the evidentiary hearing. Thus, Appellant's first argument is meritless.

Second, Appellant contends that Velez's recantation constitutes after-discovered evidence warranting a new trial.

> In ***Commonwealth v. Starr***, 450 Pa. 485, 301 A.2d 592 (1973), the [S]upreme [C]ourt held that a court should allow the withdrawal of a guilty plea after sentencing to correct a manifest injustice to the defendant. Subsequently, the supreme court determined that any after-discovered evidence which would justify a new trial would also satisfy the requirements of ***Starr, supra***. ***Commonwealth v. Peoples***, 456 Pa. 274, 319 A.2d 679 (1974). For a defendant to be entitled to a new trial where he has produced after-discovered evidence, "the evidence must have been discovered after the trial and must be such that it

could not have been obtained at the trial by reasonable diligence, must now be cumulative or merely impeach credibility, and must be such as would likely compel a different result." ***Commonwealth v. Bulted***, 443 Pa. 422, 279 A.2d 158 (1971).

***Commonwealth v. Crawford***, 427 A.2d 166, 175 (Pa. Super. 1981).

Here, Appellant has not proven that a manifest injustice will result if he is precluded from withdrawing his plea, or that Velez's unreliable recantation would likely compel a different result if Appellant were to withdraw his plea and proceed to trial. Again, the PCRA court "found that the witnesses who testified on [Appellant's] behalf at the evidentiary hearing were *not* credible and were completely and utterly unreliable." PCO at 8-9 (emphasis in original). The PCRA court "wholly reject[ed] their testimony," including that of Velez. Because the court's credibility determinations are supported by the record, as discussed *supra*, they are binding on this Court. ***Burton***, 121 A.3d at 1067 (citation omitted). Accordingly, Appellant's argument that he is entitled to proceed to trial based on the after-discovered evidence of Velez's recantation is meritless.[1]

_____

[1] Appellant argues that the outcome of the proceedings would have been different because, had he known that Velez would recant, he would not have pled guilty. ***See*** Appellant's Brief at 48 n. 136 (stating, "if a defendant believes that, had the new facts been available to him *before* he chose to plead guilty, he would not have pled guilty, relief must be granted by withdrawing his guilty plea, assuming of course, the new facts prove a manifest injustice"). Appellant seems to be utilizing the standard for proving that prejudice resulted from *ineffective assistance of counsel* in the context of a guilty plea. ***See Commonwealth v. Fears***, 86 A.3d 795, 807 (Pa. 2014) ("To prove prejudice, appellant must prove 'he would not have pled guilty and would have achieved a better outcome at trial.'") (citation omitted). Even if this is the appropriate standard to apply herein, and we

*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2016

---

*(Footnote Continued)*

accepted that Appellant would not have pled guilty knowing that Velez would recant, he still cannot demonstrate a manifest injustice, or that he would have achieved a better outcome at trial based on Velez's incredible testimony. ***See id.***